May it please the Court, Zach Howe on behalf of Appellant Doug Clark. I'd like to reserve two minutes for rebuttal, Your Honor. You have a clock there, but I'll also try to help you. Great, thank you. This Court should reverse the District Court's decision under Turner for three reasons. First, the regulation does not conserve resources because public data and record evidence shows that inmates filed only one or two appeals per year before the regulation and that the regulation did little to reduce that already low number. Second, the regulation leaves inmates with no alternative means of asserting even meritorious appeals involving fundamental rights if they've already used their allotted appeal for a given period. And finally, the regulation is unnecessary because other regulations already target abusive filers and thereby conserve resources without imposing arbitrary restrictions like the one at issue here. Now, this Court can reverse based on the first Turner factor alone for several reasons. I've alluded to some of them already. But essentially, there was no problem, meaning that appeals were not excessive. The regulation didn't fix any problem that did exist. How many appeals has your client filed? So over the past several decades, I think the logs go back to 1996, he's filed about 600 appeals, which I think would come out to about 30 a year. But again, that's above the average. And it's significant that the justification for this regulation is that if everyone filed the number of appeals that Clark filed, then there would be a legitimate interest in imposing this regulation because we would need to conserve resources. However, that's based on a hypothetical 40-fold increase in the number of appeals that have ever actually been filed. So in and it's also significant, by the way, that the State has justified the regulation primarily based on the need to restrict the appeals rights of those who file a lot of appeals and assumedly a lot of abusive appeals. However, we already have regulations that do just that. We have a regulation that targets abusive filers if they have filed frivolous appeals in the past. We also have the mechanism of screening, which weeds out about Does that take up resources, reviewing those frivolous claims? Yes, Your Honor. But I should note that this screening mechanism kicks in before the regulation at issue here ever applies, meaning that screening appeals is going to occur regardless of whether this regulation is here or not. So the regulation doesn't reduce the drain on any drain on resources from screening. And that's I'm trying to understand exactly the First Amendment right. I understand the First Amendment right of access to the courts. Is your claim, as I read it in your brief, that you have unfettered right? In other words, there can be no limit placed on the number of appeals? Well, Your Honor, the argument is that the regulation infringes upon the right to access the courts by barring the filing of grievances. And our argument is then that the regulation fails under the four Turner factors. I know, but you didn't answer my question quite yet. My question is, is it your view, as I understand your claim, that your client, under the claimed First Amendment right, has no limitation on the number of appeals? I think it would be a much harder case if it were, you know, if this were a much more generous regulation, you know, if it allowed five appeals during one week or something like that. But if that's your argument, then what about your argument that it would preclude him from filing in an emergency? So whether you had five or a thousand, if he had an emergency on number six or number 1,001, wouldn't you be back in the same place? Well, Your Honor, so I don't think emergency appeals are at issue here because there is an exception for the filing of emergency appeals. Well, so then that goes at odds with what you said, that he doesn't have any basically out as a result of this. But if he can file an emergency appeal, then the limitation does not restrict him in those circumstances, right? That's correct, Your Honor. But I should say that the emergency appeal exception is very narrow. It applies only to appeals involving bodily injury or a serious risk to health. So if an inmate has their Bible confiscated, if they're not allowed to speak to their the emergency regulation doesn't help an inmate in that situation. And I should note that this Court in other cases, such as, for example, Ashker, has held that much lighter restrictions violate the second-turner factor, which I think is what we're talking about here. The Court in that case said that a restriction that required a specific label from a vendor for certain types of books to be sent to inmates violated the second-turner factor, even though the inmate could still get other mail. So that was a much lighter restriction than the one we're talking about. But yet the Court still found a violation of the second-turner factor. So I think we're well within this Court's case law here. So we've talked about the first and the second-turner factor. The third-turner factor, the analysis is separate. Let me interrupt you just a second. Okay. So you're saying that the problem with this regulation is that it bars. It's too restrictive, right? It keeps the prisoner from filing too many of these claims, non-emergency claims. So what should the regulations say? Well, Your Honor, I think the regulations that we have that target abusive filers so, in other words, they don't indiscriminately deny appeals without regard to their They target filings that don't comply with the rules or don't state a comprehensible claim of harm. So you're saying there should be no numerical restriction? I don't think so in light of the regulations that we have that are already serving the interest of conserving resources and serving it effectively, because, again, appeals amount to one or two per year per inmate, and that was the same before the regulation and after. There's not even in non-prisoner or non-inmate cases individuals don't have a right to file unlimited appeals if they're determined to be frivolous, correct? It's true that inmates have anyone has no right to file a frivolous appeal. But, again, I think that's why the regulations that actually target frivolous appeals are the right way to go about this. Why is this framed as a First Amendment challenge rather than a due process in terms of the process being provided within the prison context? Well, Your Honor, the Supreme Court has actually said that it's not exactly clear where the right to access the courts come from. We brought this under the First Amendment because this Court in Intler and in Bradley and in most of its cases has tended to say that the right to file grievances encompassed within the right to access the courts is a First Amendment right. So I think under this Court's cases, the First Amendment is the right rubric here. Do you want to save your remaining time? Yes, Your Honor. Thank you. Good morning. May it please the Court, my name is Martine D'Agostino, appearing for Appellee Jeffrey Beard. The Court should affirm the district court's grant of summary judgment for three reasons. First, Clark's injury is purely hypothetical, and he has not met his burden to show an underlying legal claim that has been hampered by the challenged regulation. Clark has failed to identify a missed litigation opportunity in either a criminal, habeas, or civil rights action that was caused by the regulation limiting non-emergency appeals to one per 14 days. Two, maintaining institutional security and managing prison resources. Can I just understand your argument? You're saying that his facial challenge to the regulation fails for lack of standing? Yes. It can be addressed as a standing issue or on the merits, but an access-to-courts claim requires an actual injury, and Clark has never identified an actual injury. There's no freestanding right to file prison grievances. Second, maintaining institutional security and managing prison resources is rationally connected to limiting non-emergency appeals. And third, Clark's retaliation claim was properly dismissed without leave to amend because he did not allege the elements of retaliation, despite specific instructions from the district court. A claim for denial of access to courts requires a litigant to identify a non-frivolous litigation opportunity that he has missed. Essentially, it requires a litigant to show that he was shut out of court. Clark's contentions that he would have filed four appeals if not for the regulation missed the mark. Clark has offered no evidence that he filed suit as to any of these four appeals, and there's no reason why he could not have. Futility is not an exception to the exhaustion requirement. Moreover, Clark has offered no reason why he could not have waited 14 days and refiled. The regulation is constitutional under the four-part test. So let me get your drift there. If he had filed this number of appeals and now he's out numerically, and then he has an emergency that is not one that's necessarily bodily harm, that would fall into the emergency exception, but a very significant one, such as access to counsel because of his mail, you're saying that he could not then file in federal court an alleged futility in order to meet the exhaustion requirement? Well, Mr. Clark has not alleged that he did file four appeals. I'm asking you. Yes. I understand, Your Honor. I'm sorry. It's a hypothetical, as we call it. Yes. So he could wait 14 days, or alternatively, assuming he had submitted an appeal  The regulation is constitutional under the four-part test of Turner v. Safley. There's a valid rational connection between the prison regulation and the governmental interest put forward to justify it. As the appeals coordinator's declaration and initial statement of reasons demonstrate, prior to the regulation change, the system was bogged down by a small number of frequent filers. The one-per-14-day limitation was intended to regulate this influx and broaden access to more than just a small group of frequent filers. His argument to that is, you know, you could be a frequent flyer, filer, and have a legitimate claim, but if you didn't have a legitimate claim, then it'll get screened out under the process. So why cut it off at the pass? I think that's his argument. What does the government say about that? Well, the appeals coordinator has the discretion to accept additional appeals within the 14-day time period. And in this hypothetical, Clark could wait 14 days and reallege, refile his appeal. Also, there's nothing preventing an inmate from bringing the issue to the attention of prison authorities outside of the appeals process. So you can bring more than one claim or complaint within 14 days, but it's discretionary? It's discretionary. Okay. The regulation change was intended to filter out non-meritorious appeals and ensure that all appeals are properly investigated. There are alternate means of exercising the right. Emergency appeals, as I've said, are not limited. Appeals coordinator has the discretion to accept additional appeals within the 14-day period, and an inmate may wait 14 days. It doesn't prohibit access. It just delays it. And the intention was to create a cooling-off period for these frequent filers. The impact of the accommodation of the right on guards and other inmates and the allocation of prison resources generally, the third factor under Turner, a fair reading of the fiscal impact statement is that the implementation of the regulations would not increase resource requirements, but increase the quality of the work performed. Clark concedes that up to eight staff members at the institution review and respond to his appeals. Responding to appeals takes time away from other duties, and there are no ready alternatives. Title 15 already narrowly tailors — is already narrowly tailored to allow inmates to file an unlimited number of emergency appeals. As to Clark's retaliation claim, after two tries, the district court denied a leave-to-amend on Clark's retaliation claim. They found that he had failed to allege a retaliation claim, and the district court did not abuse its discretion in denying leave-to-amend. Clark was carefully instructed as to how to allege a retaliation claim, but he failed to follow the court's advice. The court is not required to act as counsel for pro se litigants. If there are no other questions, we'll rest. We ask that the district court's order granting summary judgment be affirmed. Thank you. Thank you. I'd just like to make three quick points, Your Honor. First, it's true that officials have the discretion to accept extra appeals. However, I believe the provision is 3084.6a. It only applies in exceptional circumstances, and there is no evidence that officials have ever actually exercised this discretion to accept an appeal denied under this regulation. As to standing --" I'm sorry. Do you have documentation that an inmate asked for the discretionary authority and it was denied? As I understand it, Your Honor, it is at the discretion of the officials, but the inmate --" I don't see any mechanism in the regulations for the inmate to ask for this relief. Perhaps they can, but to the extent they can't, no, I don't have that documentation. That sort of seems to go to the first point raised by your opposing counsel, which is that there was no actual injury. So you don't have any evidence that your client submitted a claim and that it was denied because of being excessive and then requested discretionary review and that was denied, right? Well, Your Honor, I will say Clark has said that if he were allowed to actually review the documents for his appeals, because they don't receive copies of the appeals they submit, if he were allowed to review those documents and the rejections, he would be able to identify a host of appeals that were non-frivolous that were rejected. And it's undisputed that he's had a number of appeals denied. So I think at the very least, a remand for jurisdictional discovery would be appropriate. However, I don't think this Court actually needs to do that because I lay out a number of examples in my reply brief where Clark has asserted non-frivolous appeals that he was not able to file because of this regulation. And that's all that's required under Lewis v. Casey. He needs to be hindered from filing a claim. And here he was not just hindered, he was prohibited from filing those claims under the regulation. Sotomayor, it's prohibited if it's possible that the authorities have discretion to grant it. Well, Your Honor, I see my time has expired. It's okay. You still get the answer. Okay.  Thank you. You were hoping. So, again, Your Honor. But you don't want to. So I think it's significant that this is a provision that only applies in exceptional circumstances, and there's no evidence it's ever been used. And I should point out that this is a new argument. Prior to this oral argument, I have not heard this provision about the discretion to accept an appeal beyond the 14-day requirement. So I'm not sure the Court should even consider the argument. But, again, it's exceptional circumstances. There's no evidence it's ever been applied. Thank you. The case gets argued. Clark v. Beard is submitted. I also would like to thank you, Mr. Howe, and your firm for your pro bono representation. I know and also thank Ms. D'Agostino for her argument today. And I know often it's much easier for the other side as well to have counseled cases because they're well laid out. It's better for opposing counsel. It's better for the Court. And, of course, it's a very good part of our justice system here at the Ninth Circuit. So thanks to both of you. Case is submitted. We'll now hear argument in L.N. Management v. the IRS.
judges: Fernandez, McKeown, Benitez